UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **PEMA SHERPA** | **CASE NO. 3:25-CV-01718 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JUDITH ALMODOVAR ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM ORDER

Pending before the Court is a Motion for Temporary Restraining Order ("TRO") or Preliminary Injunction, and Motion for Order to Show Cause [Doc. No. 14] filed by Petitioner, Pema Sherpa ("Petitioner"). Federal Respondents, Judith Almodovar, Melissa Harper, Todd Lyons, and Kristi Noem (collectively, "Respondents"), oppose the Motion [Doc. No. 26]. Petitioner filed a reply [Doc. No. 33]. After carefully considering Petitioner's filings and the applicable law, the Motions are **DENIED**.

### I. Background

Petitioner is a Nepali citizen who has physically resided in the United States since around December 4, 2015, when she illegally crossed the United States-Mexico border.[1] The Department of Homeland Security ("DHS") immediately arrested and detained her but released her on December 5, 2015, under an order of supervision.[2] Petitioner alleges she "asserted a fear of persecution if returned to Nepal," but was not administered a credible fear interview as required by 8 U.S.C. § 1225(b)(1)(A)(ii).[3]

---

[1] [Doc. No. 1, at ¶ 2].
[2] [Id. at ¶ 3].
[3] [Id.].

Page 1 of 6

Petitioner moved to New York and remained there ever since.[4] On June 16, 2017, Petitioner "filed an application for asylum with [the United States Citizenship and Immigration Service ("USCIS")], alleging a fear of persecution if returned to Nepal."[5] USCIS dismissed her asylum application, finding they "lacked jurisdiction because Petitioner was subject to expedited removal proceedings since her entry in 2015, and that her claim of fear of persecution would be considered by an asylum officer through the credible fear screening process pursuant to 8 CFR § 208.30."[6]

On October 29, 2025, U.S. Immigrations and Customs Enforcement ("ICE") agents arrested Petitioner at her house.[7] After briefly detaining Petitioner in New York, ICE moved her to the "Richwood ICE immigration facility in Monroe, Louisiana."[8] As such, Petitioner's Petition for Writ of Habeas Corpus ("Habeas Petition"), originally filed in the United States District Court for the Southern District of New York,[9] was transferred to this Court.[10]

After her case was transferred to this Court, Petitioner filed an Amended Habeas Petition that clarified her arguments of illegal detention—violation of the Fourth Amendment, violation of the Fifth Amendment's right to substantive and procedural due process, violation of the Immigration Nationality Act and its implementing regulations, and violation of the Administrative Procedure Act.[11]

---

[4] [Id. at ¶ 4].
[5] [Id.].
[6] [Id. at ¶ 5 (citation modified)].
[7] [Id. at ¶ 6].
[8] [Doc. No. 4, p. 1].
[9] [Doc. No. 1].
[10] [Doc. No. 6].
[11] [Doc. No. 13, at ¶¶ 29–56].

Petitioner also filed the instant Motion, arguing she is entitled to preliminary relief based solely on the exact same legal arguments.[12]

The parties briefed all relevant issues, and the matter is ripe.

## II.     Law and Analysis

Rule 65 authorizes federal courts to issue TROS and preliminary injunctions. FED. R. CIV. P. 65(a)–(b). Where, as here, an adverse party has notice, a TRO is treated as a preliminary injunction. *See Butts v. Aultman*, 953 F.3d 353, 361 n.6 (5th Cir. 2020). Courts must then follow the four-part test the Supreme Court laid in *Winter v. Nat. Res. Def. Council, Inc.*, to determine whether to issue a preliminary injunction. 555 U.S. 7 (2008). Parties "seeking a preliminary injunction must establish (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, *and* (4) that an injunction is in the public interest." *Id.* at 20 (citation modified).

The Supreme Court, very recently, reminded lower courts that preliminary injunctions are, as their name suggests, preliminary and should "not conclusively resolve legal disputes." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025). In other words, they should not be used to rule on the final, merits question.

Rather, TROs and preliminary injunctions help "preserve the status quo until a trial" or other final disposition is rendered. *Id.* at 193. That begs the question: what does it mean to preserve the status quo? While the words "status quo" do not appear within Rule 65 or the *Winters* factors, it is implicit in the "irreparable harm" prong.

---

[12] [Doc. 14, pp. 12–19].

Courts sometimes describe irreparable harm as those injuries, which "cannot be undone through monetary remedies." *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984) (citation omitted). But that is only one side of the coin. Irreparable harm must also take away "the court's ability to render a meaningful decision on the merits." *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974); *see also* Samuel L. Bray, *The Purposes of the Preliminary Injunction*, 78 Vand. L. Rev. 809, 823–26 (2025) (concluding the same after probing Founding-era sources). Put differently, "[t]here is always a status quo. There should not be a preliminary injunction to protect it, however, unless the court's ability to render a meaningful decision on the merits would otherwise be in jeopardy." *Callaway*, 489 F.2d at 573.

    Here, Petitioner seeks the same relief in her underlying Habeas Petition and her Motions for preliminary relief—release from custody or a bond hearing.[13] Liberty is inarguably the most paramount natural right. And true, the Fifth Circuit has held even momentary loss of a right constitutes irreparable injury. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (citation omitted) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). But context matters. In *Opulent Life Church*, the plaintiff leased property for a new church but was denied a renovation permit by the defendants. *Id.* at 283. In finding the defendant's act caused irreparable harm, the Fifth Circuit noted that the plaintiff "will lose its lease if it is not allowed to operate in its leased property." *Id.* at 297. So, a final ruling on the merits is too little, too late.

---

[13] [Doc. No. 13, p. 15]; [Doc. No. 14, p. 20].

Again, the inquiry is whether something suggests a final ruling would not grant the plaintiff the prayed-for relief. *See Callaway*, 489 F.2d at 573.

Petitioner cannot show either that she faces imminent removal or the existence of something else that would make a favorable ruling on the Habeas Petition too little, too late. Rather, she argues preliminary relief is needed to preserve her prior status quo—not being detained.[14] Additionally, she argues that since there "was no expedited briefing scheduling in effect [when she filed this Motion,] the Court should not deny the Motion for preliminary relief on this basis."[15] The Court is unpersuaded. Petitioner's interpretation of "preserving the status quo" clashes with binding Fifth Circuit precedents such as *Callaway* and *Opulent Life Church*. And, this Court has previously declined to adopt Petitioner's interpretation in several other similar cases. *See Bueso v. Noem*, No. 3:25-CV-1505, 2025 WL 3707316, at *2–3 (W.D. La. Dec. 22, 2025); *Gonzalez v. Noem*, No. 3:25-CV-2117, 2025 WL 3755544, at *2 (W.D. La. Dec. 29, 2025); *Guizar Lozano v. Ladwig*, No. 1:25-CV-1611, 2025 WL 3765945, at *7–8 (W.D. La. Dec. 30, 2025). As such, Petitioner has not shown irreparable harm, and so, she is not entitled to preliminary relief.

The Court notes that these findings may change. If Respondents' actions change Petitioner's circumstances such that the Court could not eventually redress Petitioner's claims, preliminary relief might be appropriate. But to accept Petitioner's argument that any unlawful detention warrants preliminary relief would circumvent

---

[14] [Doc. No. 33, p. 15].
[15] [Id.].

the Congressionally-selected procedures set forth in the habeas statute, 28 U.S.C. § 2241. And this Court declines to take up that offer.

### III. Conclusion

For these reasons,

**IT IS ORDERED** that Petitioner's Motion for a TRO or a Preliminary Injunction [Doc. No. 14] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion is **DENIED**, insofar as it requests an Order to Show Cause.[16]

**IT IS FURTHER ORDERED** that Petitioner's Habeas Petition [Doc. No. 13] is referred to the Magistrate Judge.

MONROE, LOUISIANA, this 9th day of January 2026.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

---

[16] Petitioner's Motion is titled, "Order to Show Cause for Preliminary Injunction or Temporary Restraining Order Granting Immediate Release from Custody." [Doc. No. 14]. Since the Motion does not address the show cause provisions associated with habeas petitions arising under § 2241 (i.e., the provisions in 28 U.S.C. § 2243), the Court summarily denies that aspect of the Motion at this time.