UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **PEMA SHERPA** | **CIVIL ACTION NO. 25-1718** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **JUDITH ALMODOVAR, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Petitioner Pema Sherpa, a detainee at Richwood Correctional Center in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[1] For reasons below, the Court should deny her petition.

### Background

Petitioner is a citizen of Nepal. [doc. # 13, p. 1]. She "has been physically present in the U.S. since on or about December 4, 2015, when she entered the country by crossing the Mexico-U.S. border." *Id.* "Upon entry, she was apprehended by [DHS] officials. Although she asserted a fear of persecution if returned to Nepal, Respondents did not administer a credible fear of persecution interview" under 8 U.S.C. § 1225(b)(1)(A)(ii). *Id.* On December 5, 2015, Petitioner "was served with a blank, unsigned order of expedited removal and an order of supervision, and was told that she would be notified once her credible fear interview was scheduled." [doc. #s 13, p. 1; 13-2]. She was released from detention the same day. *Id.*

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

"Upon release, [Petitioner] went to live in New York, and has remained there ever since. No credible fear interview was scheduled, and so in June 2017 she retained an attorney who filed an application for asylum on her behalf with USCIS, alleging a fear of persecution if returned to Nepal." [doc. # 1, p. 2].

"By letter dated June 11, 2025, USCIS stated that it was dismissing Petitioner's asylum application, nearly 8 years after it was filed, on the basis that USCIS lacked jurisdiction because she was subject to expedited removal proceedings since her entry in 2015, and that her claim of fear of persecution would be 'considered by an asylum officer through the credible fear screening process pursuant to 8 CFR 208.30.'" [doc. # 1, p. 2]. "On the evening of October 29th, 2025, ICE officers detained Petitioner outside her home, when she was returning from work." *Id.*

Petitioner filed this proceeding on approximately October 31, 2025. She claims: (1) ICE officers violated her Fourth Amendment rights by detaining her within the curtilage of her home without a warrant; (2) her present detention violates her right to substantive due process under the Fifth Amendment; (3) her re-detention violated her right to procedural due process; (4) the Government's dismissal of her asylum application, as well as their subsequent detention of her, "violates the entire statutory and regulatory scheme underlying the expedited removal process"; (5) the Government's dismissal of her 2017 asylum application violated the Administrative Procedure Act; and (6) the Government violated the *Accardi* doctrine by failing to comply with regulations concerning terminating her release from custody and re-detaining her, failing to timely schedule a credible fear interview, and entering the curtilage of her home without a warrant. [doc. # 13].

For relief, Petitioner seeks either immediate release from custody or a bond hearing, an injunction directing Respondents to reinstate her asylum application, and attorneys' fees under the Equal Access to Justice Act.  [doc. # 13, pp. 14-15].

On December 8, 2025, an immigration judge affirmed the DHS's negative credible fear determination and returned Petitioner's "case" to the DHS "for removal of the Applicant."  [doc. # 26-1, p. 4].

Respondents oppose the petition.  [doc. # 26].

### **Jurisdiction**

Because it concerns the Court's power to decide the case, "[j]urisdiction is always first." *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) (quoting *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021)).  "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted).  Several sections of the Immigration and Nationality Act curtail the jurisdiction of federal district courts in immigration cases.  *See Jennings v. Rodriguez*, 583 U.S. 281, 292-96 (2018).

Petitioner's primary argument appears to be that because (1) neither an immigration officer nor supervisor signed the bottom portion of the Form I-860[2] she received—the bottom portion is separately captioned, "Order of Removal Under Section 235(b)(1) of the Act"—, (2) she was released from detention and lived in the United States of America for over nine years before she was detained again, and (3) ICE did not schedule a timely credible fear interview, she should not be in expedited removal proceedings under 8 U.S.C. § 1225(b)(1), and, therefore, ICE

---

[2] [doc. # 13-2].

should not have revoked her release on supervision and dismissed her asylum petition. [doc. # 13, p. 7].[3] Colloquially, she claims that because she did not receive a signed order of expedited removal, she was not and is not in expedited removal proceedings. She claims that because she lived in the United States for over nine years, there is nothing "expedited" about her removal. And she claims that because ICE did not schedule a credible fear interview as required under the expedited removal procedure in 8 U.S.C. § 1225(b)(1)(A)(ii), for almost ten years, she is not subject to the expedited removal process. Of note, an immigration officer did sign the top portion of the Form I-860 (captioned, "Determination of Inadmissibility"), which states that Petitioner is not a citizen or national of the United States, that she is a native and citizen of Nepal, and that she is an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act. [doc. # 13-2].

Under 8 U.S.C. § 1252(a)(2)(A)(ii-iii), entitled, "Review relating to section 1225(b)(1)," "Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review-- . . . (ii) except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of [Section 1225(b)(1)], [or] (iii) the application of [Section 1225(b)(1)] to individual aliens, including the determination made under section 1225(b)(1)(B) of this title . . . ."

---

[3] Petitioner states that her "two main arguments" are (1) "that there is no legal basis for her detention because there is no order of removal in effect" and (2) that Respondents "cannot legally subject Petitioner to an expedited removal process, with its attendant lack of judicial review and restricted due process protections, ten years after she has entered the country." [doc. # 33, p. 6].

4

Here, Section 1252(a)(2)(A)(ii-iii), strips this Court of jurisdiction over Petitioner's second, fourth, fifth, and sixth claims. In short, Petitioner claims that Section 1225(b)(1) (expedited removal proceedings), does not apply to her. For instance, in her second count, she claims that she is unlawfully detained under Section 1225. [doc. # 13, pp. 9-10]. In her fourth count, she argues that "there is no statutory or regulatory authority to place someone into expedited removal proceedings ten years after they have been allowed to enter the country." *Id.* at 11-12. In her fifth count, she claims that she was not "subject to expedited removal proceedings at the time she filed her asylum application in June 2017, and she is not subject to them when USCIS purported to 'dismiss' it in June 2025." *Id.* at 13. Further, her sixth count is largely grounded in her contention that she is not in expedited removal proceedings and that therefore Respondents failed to comply with regulations concerning the revocation of her release and the failure to schedule a timely credible fear interview. *Id.* at 14.

Plainly, Petitioner asks this Court to (a) review the Government's decision to invoke Section 1225(b)(1), and to (b) review the application of Section 1225(b)(1), to her. *See generally Arora v. United States Dep't of Homeland Sec.*, 2025 WL 3641586, at *1-2 (N.D. Cal. Dec. 16, 2025) (finding, where the "bottom portion of Arora's Form I-860 (entitled 'Order of Removal') was not completed, and no order of expedited removal was issued" and where the petitioner was released on his own recognizance, that the court lacked jurisdiction under Section 1252(a)(2)(A), over claims that no credible fear interview was scheduled, that the petitioner was not in expedited removal proceedings, and that respondents failed to adjudicate his asylum application); *S.W. v. Noem*, 2025 WL 3754067, at *3 (S.D.N.Y. Dec. 29, 2025) (finding that Section 1252(a)(2)(A), deprived the court of jurisdiction to determine whether the petitioner remained in expedited removal proceedings and concluding, "This jurisdictional bar precludes adjudication

5

of S.W.'s claims, each of which are dependent upon the propriety of returning S.W. to expedited removal proceedings after once having been paroled.").

In a similar case, *Singh v. United States Dep't of Homeland Sec.*, 2025 WL 3241157, at *3-4 (N.D. Cal. Nov. 20, 2025), the petitioner argued that years ago, "DHS 'initiated—but never completed—an expedited removal process against Plaintiff' and that '[h]aving released him under INA § 236, permitted him to reside openly in the United States, and accepted his properly filed affirmative asylum application,' DHS [could not] 'resurrect that long-dormant [expedited removal] process and compel him to undergo a credible-fear interview as if he had just arrived at the border.'" The petitioner argued that "such a result [was] barred by the INA and the Constitution." *Id.* He argued further "that no final order of removal was ever entered because the Form I-860 issued to [him lacked] the signature of a supervisor." *Id.* Citing *Alvarado-Herrera v. Garland*, 993 F.3d 1187, 1191 (9th Cir. 2021), the *Singh* court opined that under Section 1252(a)(2)(A), it lacked jurisdiction over Singh's request to prevent the government from enforcing the expedited removal order. *Id.*

Notably, the undersigned does not find that Section 1252(a)(2)(A)(ii-iii), removes jurisdiction over Petitioner's third count, where she claims she lacked procedural due process. There, she claims that *even if* she was subject to Section 1225(b)(1), and thus an expedited removal order, she is and was still entitled to procedural due process. [doc. # 13, p. 11]. Consequently, she does not ask the Court to review a decision to invoke Section 1225(b)(1), or the application of Section 1225(b)(1).

Next, 8 U.S.C. § 1252(g) (emphasis added), strips the Court of jurisdiction over Petitioner's first count. Section 1252(g), provides: "Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of

6

Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien *arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders* against any alien under this chapter."

In Petitioner's first count, she claims that ICE officers, in violation of the Fourth Amendment, detained her in the curtilage of her home without first securing a warrant. [doc. # 13, pp. 8-9]. This claim arises from a decision to commence removal proceedings against Petitioner. *See Sissoko v. Rocha*, 509 F.3d 947, 950 (9th Cir. 2007) ("Considering these circumstances, particularly the existence in the record of a half-completed Form I–860, we conclude that Sissoko's detention arose from Rocha's decision to commence expedited removal proceedings. . . . [W]e hold that 8 U.S.C. § 1252(g)'s jurisdiction-stripping language covers the Sissokos' false arrest claim."); *Limpin v. United States*, 828 F. App'x 429 (9th Cir. 2020) (opining, where a petitioner alleged that he was wrongfully arrested and detained in connection with removal proceedings, that the "district court properly dismissed [the] action for lack of subject matter jurisdiction because claims stemming from the decision to arrest and detain an alien at the commencement of removal proceedings are not within any court's jurisdiction.").

Respondents tentatively argue that Section 1252(g), strips this Court of jurisdiction over Petitioner's third count. [do. # 26]. There, Petitioner claims that the revocation of her release on supervision and her subsequent re-detention absent a pre-deprivation hearing, an opportunity to challenge the re-detention, and a post-deprivation bond hearing violated her right to procedural due process. [doc. # 13, pp. 10-11]. However, this count does not arise from a decision to "commence proceedings, adjudicate cases, or execute removal orders." Section 1252(g), does not bar courts from reviewing an alien detention order, because such an order, "while intimately

7

related to efforts to deport, is not itself a decision to 'execute removal orders' . . . ." *Cardoso v. Reno*, 216 F.3d 512, 517 (5th Cir. 2000). Petitioner does not contest the initiation of removal proceedings or argue that Respondents may not adjudicate her case. Rather, she argues that she should have received procedural due process, so she could have an opportunity to contest her detention status. Thus, Section 1252(g), does not eliminate jurisdiction over this count. *See generally Diaz v. Wofford*, 2025 WL 2581575, at *6 (E.D. Cal. Sept. 5, 2025).

Respondents next argue that 8 U.S.C. § 1252(a)(5), divests this Court of jurisdiction over Petitioner's claims. [doc. # 26, p. 19]. Section 1252(a)(5) (emphasis added), states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review *of an order of removal* entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

Plainly, Section 1252(a)(5), does not apply here because it only applies to reviews of orders of removal, and Petitioner does not challenge an order of removal.

Respondents also argue that 8 U.S.C. § 1252(b)(9), removes the Court's jurisdiction. [doc. # 26, p. 19]. However, like above, Section 1252(b)(9), only applies to "review of orders of removal." [4] 8 U.S.C. § 1252(b). To reiterate, Petitioner does not challenge an order of removal.

Petitioner maintains that this Court enjoys jurisdiction over all her claims under 8 U.S.C. § 1252(e). [doc. # 33, pp. 7-8]. Relevant here, Section 1252(e)(2), provides:

---

[4] *See Kambo v. Poppell*, 2007 WL 3051601, at *9 (W.D. Tex. Oct. 18, 2007); *Immigrant Defs. L. Ctr. v. Mayorkas*, 2023 WL 3149243, at *17 (C.D. Cal. Mar. 15, 2023).

> Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of—
>
> (A) whether the petitioner is an alien,
>
> (B) whether the petitioner was ordered removed under such section, and
>
> (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

8 U.S.C. § 1252(e)(2). Here, Petitioner does not ask the Court to determine if she is an alien under (A) above. Nor does she ask the Court to, under (C) above, determine that she was admitted for permanent residence, has been admitted as a refugee, or has been granted asylum. As to (B), the Court need not determine if Petitioner was ordered removed under Section 1252(b)(1), because all parties agree that she was not ordered removed when she was released on supervision and when ICE revoked her supervision. Petitioner states specifically that she "is not and has never been subject to any order of expedited removal . . . ." [doc. # 33, pp. 7-8]. She concedes that "Respondents acknowledge that no order of removal was issued at the time of her entry . . . and do not claim that one has been issued since then[.]" *Id.* at 8. Respondents agree, stating, "there was no removal order." [doc. # 26, pp. 13, 27].

In summary, the Court lacks subject matter jurisdiction over Counts 1, 2, 4, 5, and 6 of the petition (all but Count 3). Accordingly, the Court should dismiss these counts without prejudice.

## Merits

As to Count 3, Petitioner first claims that she did not receive the process she was due under 8 C.F.R. § 241.4(l). [doc. # 13, p. 11]. Section 241.4, however, does not apply to Petitioner. Under 241.4(a):

> Except as provided for in paragraph (b)(2) of this section,[5] the provisions of this section apply to the custody determinations for the following group of aliens:
>
> (1) An alien ordered removed who is inadmissible under section 212 of the Act, including an excludable alien convicted of one or more aggravated felony offenses and subject to the provisions of section 501(b) of the Immigration Act of 1990, Public Law 101–649, 104 Stat. 4978, 5048 (codified at 8 U.S.C. 1226(e)(1) through (e)(3)(1994));
>
> (2) An alien ordered removed who is removable under section 237(a)(1)(C) of the Act;
>
> (3) An alien ordered removed who is removable under sections 237(a)(2) or 237(a)(4) of the Act, including deportable criminal aliens whose cases are governed by former section 242 of the Act prior to amendment by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Public Law 104–208, 110 Stat. 3009–546; and
>
> (4) An alien ordered removed who the decision-maker determines is unlikely to comply with the removal order or is a risk to the community.

8 C.F.R. § 241.4 (footnoted added). Here, as the parties agree, Petitioner was not ordered removed when she claims she was entitled to this regulatory process. *See generally Carmen G.C. v. Robbins*, 2025 WL 3521304, at *6 (E.D. Cal. Dec. 8, 2025) (observing that 8 C.F.R. § 241.4(l), "deals only with the release and re-detention of noncitizens who have been ordered removed and are beyond the removal period. *See generally* 8 C.F.R. § 241.4. Petitioner was not ordered removed, so that regulation does not apply here.").

---

[5] Paragraph (b)(2) applies to Cuban nationals.

Finally, citing only *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976),[6] Petitioner claims that under the Fifth Amendment, she was and is due the following procedural process: "a pre-deprivation hearing, in order to challenge the basis for her detention, as well as a prompt post-deprivation bond hearing before a neutral arbiter, after which she should be released if she is not found to be a danger to the community or a flight risk." [doc. # 13, p. 11]. *Matthews*, however, is patently inapposite: there, a person whose social security disability benefits had been terminated challenged the constitutionality of the administrative procedures established by the Secretary of Health, Education, and Welfare for assessing whether a continuing disability exists. *Mathews*, 424 U.S. at 319. Thus, the Court should dismiss this unsupported claim.[7]

## Recommendation

For the reasons above, IT IS RECOMMENDED that Count 3 of Petitioner Pema Sherpa's petition be **DENIED AND DISMISSED WITH PREJUDICE**.

IT IS FURTHER RECOMMENDED that the remaining counts in the petition be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation

---

[6] Petitioner also cites *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), but only for the general proposition that: "Due Process Clause of the Fifth Amendment forbids the Government to deprive any person of liberty without due process of law. It applies to all 'persons' within the United States, including non-citizens, whether their presence is lawful, unlawful, temporary, or permanent[.]" [doc. # 13, p. 10].

[7] Respondents argue that Petitioner's procedural due process claim is moot "because now there is a removal order, and the defendant shall be retained during removal period under 8 U.S.C. § 1231(a)(2)(A)." [doc. # 26, p. 27]. Respondents, however, do not provide any evidence that Petitioner was ever ordered removed. And Petitioner disputes Respondents' contention, maintaining that "no order of removal has ever actually been issued." [doc. # 33, p. 4]. Consequently, the undersigned does not find that this count is moot.

to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 20th day of January, 2025.

                                                Kayla Dye McClusky
                                                United States Magistrate Judge