UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

PEMA SHERPA

VERSUS

JUDITH ALMODOVAR ET AL

CASE NO.  3:25-CV-01718 SEC P

JUDGE TERRY A. DOUGHTY

MAG. JUDGE KAYLA D. MCCLUSKY

MEMORANDUM RULING

Before the Court is an Amended Petition for Writ of Habeas Corpus ("Amended Habeas Petition") [Doc. No. 13] filed by Petitioner, Pema Sherpa ("Sherpa"). The Court previously dismissed all but one of Sherpa's claims and ordered supplemental briefing on the remaining claim: whether Respondents violated Sherpa's procedural due process rights [Doc. No. 40]. The parties complied [Doc. Nos. 41–43]. Sherpa alerted the Court that her removal was imminent [Doc. No. 44], so the Court temporarily stayed her removal and ordered more supplemental briefing [Doc. No. 47]. Parties again complied [Doc. Nos. 50–52].

For the following reasons, Sherpa's Amended Habeas Petition is **GRANTED**.

I.    Background

A.    Statutory and Regulatory Scheme

In 1996, Congress created an "expedited removal" process for some aliens. This process generally applies to two groups: (1) aliens "arriving in the United States," 8 U.S.C. § 1225(b)(1)(A)(i), and (2) aliens who are already in the United States without being "admitted or paroled" and who cannot show that they were "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id.* § 1225(b)(1)(A)(iii)(II).

Page **1** of **12**

The expedited removal process begins with an interview by an immigration officer. At the interview, the officer must advise the alien of the charges against them and allow the alien to respond via a sworn statement. 8 C.F.R. § 235.3(b)(2)(i). If needed, the officer must provide the alien with an interpreter. *Id.* If the officer finds that the alien is inadmissible and no exception applies, the officer must "order the alien removed" without a hearing before an immigration judge and ordinary administrative review. 8 U.S.C. § 1225(b)(1)(A)(i). The expedited removal order becomes final only after it is "reviewed by [a] supervisor." 8 C.F.R. § 235.3(b)(7).

If, during the initial interview, such aliens express that they (1) want to apply for asylum or (2) fear persecution at home, the immigration officer must refer the alien to an asylum officer for a "credible fear" interview. 8 U.S.C. § 1225(b)(1)(A)(ii). At the non-adversarial credible fear interview, the asylum officer must determine if there is "a significant possibility . . . that the alien could establish eligibility for asylum" or related protection. *Id.* § 1225(b)(1)(B)(v). If the asylum officer finds the alien cannot meet that burden, "the officer shall order the alien removed[.]" *Id.* § 1225(b)(1)(B)(iii)(I). Again, a supervisor must review the asylum officer's decision before it becomes final. 8 C.F.R. § 235.3(b)(7). If the supervisor agrees, aliens may ask an immigration judge to review that finding *de novo*. 8 U.S.C. § 1225(b)(1)(B)(iii)(II); 8 C.F.R. § 1003.42(c). If the immigration judge also agrees, the expedited removal order becomes final. 8 C.F.R. § 1003.42(f)(2). If credible fear is found at any stage, the alien is referred to United States Citizenship and Immigration Services ("USCIS"), so that they review the alien's asylum application. 8 U.S.C. § 1225(b)(1)(B)(ii).

Aliens in expedited removal must "be detained pending a final determination of credible fear of persecution [or] until removed." *Id.* § 1225(b)(1)(B)(iii)(IV).

Although the statute requires mandatory detention for such aliens, *see id.*, federal regulations allow the government to release such aliens on parole "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *See* 8 C.F.R. § 235.3(b)(4)(ii); *see also* 8 U.S.C. § 1182(d)(5)(A). Such parole is not "an admission of the alien and" the alien shall be re-detained and treated like "any other applicant for admission" once "the purposes of such parole [are found to be] served." 8 U.S.C. § 1182(d)(5)(A). Parole ends automatically in some cases. *See* 8 C.F.R. § 212.5(e)(1). More relevant here, parole may only be terminated with written notice "upon accomplishment of the purpose for which parole was authorized or when . . . neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." *Id.* § 212.5(e)(2).

The government can also release aliens, who are ordered removed, under an Order of Supervision. *See id.* §§ 241.4–241.5. In fact, "[i]f no exception applies, an alien who is not removed, within the 90-day removal period will be released" on an Order of Supervision. *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (citing 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5). This privilege, however, is reserved for those ordered removed under ordinary (as opposed to expedited) removal. *See* 8 C.F.R. § 241.4(a). To revoke an Order of Supervision, aliens must be notified of the reasons for revocation, such as enforcement of a removal order, and must "be afforded an initial informal interview promptly after" they are re-detained. *See id.* § 241.4(l).

### B.    Facts of This Case

Sherpa is a Nepali citizen who illegally entered the United States on December 4, 2015, near the United States-Mexico border.[1] The Department of Homeland Security ("DHS") immediately detained her; and since she claimed fear of persecution if sent to Nepal, DHS referred her for a credible fear interview but found no credible fear.[2] DHS then served her an order of expedited removal, which immigration officers signed, but not Sherpa,[3] and later released her under an Order of Supervision.[4]

Sherpa moved to New York and remained there ever since.[5] On June 16, 2017, Sherpa "filed an application for asylum with [USCIS], alleging a fear of persecution if returned to Nepal."[6] USCIS dismissed Sherpa's asylum application, finding they "lacked jurisdiction because she was subject to expedited removal proceedings since her entry in 2015, and that her claim of fear of persecution would be considered by an asylum officer through the credible fear screening process pursuant to" 8 CFR § 208.30.[7]

On October 29, 2025, U.S. Immigration and Customs Enforcement ("ICE") agents arrested Sherpa at her house.[8] ICE briefly detained Sherpa in New York and then moved her to the "Richwood ICE immigration facility in Monroe, Louisiana."[9]

---

[1] [Doc. No. 13, at ¶ 2].
[2] [Doc. No. 42, p. 8].
[3] [Doc. No. 45-1].
[4] [Doc. No. 13, ¶ 3].
[5] [Id. at ¶ 4].
[6] [Id.].
[7] [Id. at ¶ 5].
[8] [Id. at ¶ 6].
[9] [Doc. No. 4, p. 1].

So, the United States District Court for the Southern District of New York transferred Sherpa's Petition for Writ of Habeas Corpus, that she filed there, to this Court.[10]

Before this Court, Sherpa filed the Amended Habeas Petition that clarified her grounds for relief: violation of the Fourth Amendment, the Fifth Amendment's right to substantive and procedural due process, the Immigration Nationality Act, and the Administrative Procedure Act.[11]

On December 8, 2025, during Sherpa's detention, an immigration judge interviewed her and found she could not show a significant possibility of eligibility for asylum or related protection, and, therefore, faces no credible fear.[12] The immigration judge, therefore, affirmed DHS's prior, similar finding and returned Sherpa's case to DHS, so that DHS can remove her from the United States.[13]

In February 2026, the Court dismissed all but Sherpa's third claim,[14] in which she argues Respondents violated her Fifth Amendment procedural due process rights by revoking her supervised release without notice, re-detaining her without a pre-deprivation hearing, and not providing her a post-deprivation bond hearing.[15] The parties filed supplemental briefs, addressing the merits and remedy for that claim.[16]

On May 30, 2026, Sherpa notified the Court that Respondents were preparing to remove her, and she sought to stay her removal until the Court resolved this case.[17]

---

[10] [Doc. Nos. 1; 6].
[11] [Doc. No. 13, at ¶¶ 29–56].
[12] [Doc. No. 51-1, pp. 3–4].
[13] [Id. at p. 4].
[14] [Doc. No. 40].
[15] [Doc. 13, ¶ 39].
[16] [Doc. Nos. 41–43].
[17] [Doc. No. 44].

Respondents countered that Sherpa's removal is proper, relying on her December 5, 2015, expedited order of removal.[18] The Court stayed Sherpa's removal and asked the parties to address how the expedited removal affected Sherpa's claim.[19] Sherpa filed a second supplemental brief,[20] Respondents filed a response,[21] and Sherpa replied.[22]

The parties thoroughly briefed all relevant issues, and the matter is ripe.

## II.    Habeas Standard

"The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). "It is well established" that these protections also apply to aliens. *See Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

Congress authorizes district courts to grant "writs of habeas corpus . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). To issue the writ, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

---

[18] [Doc. Nos. 45; 45-1].
[19] [Doc. No. 47].
[20] [Doc. No. 50].
[21] [Doc. No. 51].
[22] [Doc. No. 52].

### III.  Analysis

Sherpa makes three arguments on why Respondents violated her procedural due process rights.[23] First, they should have provided notice before revoking her Order of Supervision. Second, they should have conducted a pre-deprivation hearing before re-detaining her. And third, they should have promptly provided her with a bond hearing after they re-detained her.

Start with Sherpa's first argument: that Respondents did not follow their own procedures before revoking her Order of Supervision. In support, Sherpa cites 8 C.F.R. § 241.4(l), which requires that aliens must be notified of the reasons for revoking an Order of Supervision, such as enforcement of a removal order, and must "be afforded an initial informal interview promptly after" they are re-detained.[24] Sherpa argues Respondents did not provide her the informal interview.[25]

Based on the administrative record, Sherpa received an interview during her detention.[26] But this interview was part of her expedited removal process, which allows an immigration judge to review *de novo*, an asylum officer's finding of no credible fear. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(II); 8 C.F.R. § 1003.42(c). As part of her Order of Supervision, however, Sherpa is also entitled to an informal interview after Respondents re-detained her. 8 C.F.R. § 241.4(l). The Court finds no authorities that prohibit Respondents from conducting the credible fear review and the informal revocation interview simultaneously.

---

[23] [Doc. No. 13, at ¶ 39].
[24] [Doc. No. 50, pp. 8–9].
[25] [Id. at p. 8].
[26] [Doc. No. 51-1, pp. 3–4].

Nothing in the record here, however, suggests that Respondents conducted both interviews simultaneously. If that were done, Sherpa's case would likely end. Thus, since Respondents never claimed that Sherpa received the informal revocation interview during the credible fear review, the Court concludes Sherpa never received an informal revocation interview after Respondents revoked her Order of Supervision and re-detained her.

Respondents' arguments buttress the above finding. Instead of showing they provided Sherpa the informal interview—and thus ending her case—Respondents counter Sherpa's argument by noting that since she is in expedited removal, they never had authority to issue her an Order of Supervision.[27] So although Respondents placed her under an Order of Supervision, they argue the Court should not give that decision any weight. Instead, they argue the Court should treat Sherpa's release on an Order of Supervision as humanitarian parole based on 8 C.F.R. § 235.3(b)(4)(ii).[28]

"That can't be right. Indeed, it contravenes Supreme Court precedent." *Hoffman v. Westcott*, 131 F.4th 332, 333 (5th Cir.) (opinion of Ho, J.,), *cert. dismissed*, 145 S. Ct. 1951 (2025). To show why that's the case, let's review *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1 (2020). There, the Supreme Court set aside DHS's 2018 recission of Deferred Action for Childhood Arrivals. *Id.* at 9. Key to that holding was the rule "that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Id.* at 20 (quoting *Michigan v. E.P.A.*, 576 U.S. 743, 758 (2015)).

---

[27] [Doc. No. 42, p. 12]; [Doc. No. 51, pp. 3–4].
[28] [Doc. No. 42, p. 11].

Here, what DHS action is the Court reviewing: Sherpa's 2015 release. What grounds did DHS invoke in 2015, based on the record, to release Sherpa: an Order of Supervision.[29] True, under the regulatory scheme, an alien like Sherpa who is in expedited removal may only be released on parole. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 235.3(b)(4)(ii). And Respondents very well may have released Sherpa on an Order of Supervision accidentally. The Court's role is to look at what DHS did, not what they could, would, or should have done. *See Regents*, 591 U.S. at 20. While *Regents* involved judicial review under the APA, *see id.* at 9, the Court finds that distinction immaterial. Whether in a habeas or an APA case, the reviewing court's duty is to determine whether the governmental actor followed the law. *Compare* 28 U.S.C. § 2241(c)(3) (Courts may only grant habeas relief to those held "in custody in violation of the Constitution or laws or treaties of the United States."), *with* 5 U.S.C. § 706(2)(a) ("The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]").

Applying Respondents' argument, therefore, contravenes binding Supreme Court rulings. *See Regents*, 591 U.S. at 20. The Court will not do that. Consequently, the Court agrees with Sherpa; DHS released her on an Order of Supervision. And since Respondents did not provide Sherpa an informal interview after they revoked her Order of Supervision and re-detained her, they violated her rights, as provided by 8 C.F.R. § 241.4(l).

---

[29] [Doc. No. 13, ¶ 3]; [Doc. No. 51, pp. 3–4].

Page **9** of **12**

Since the Court concludes that Respondents violated Sherpa's rights under the statutory and regulatory scheme, the Court must now decide the proper remedy. In a habeas case, the Court's "sole function is to grant relief from unlawful imprisonment or custody[.]" *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Habeas "is not available to review questions unrelated to the cause of detention." *Rice v. Gonzalez*, 985 F.3d 1069, 1070 (5th Cir. 2021) (quoting *Pierre*, 525 F.2d at 935–36).

Sherpa argues she should be released and the Court should vacate any actions Respondents took, including the credible fear review that made her removal order final and denial of her asylum case, since Respondents did not follow federal law to the tee.[30] Respondents counter that release is meaningless since Respondents can—and will—re-detain her, post-release, to remove Sherpa to Nepal since Nepal sent Respondents travel documents to send Sherpa there.[31] The Court construes this position to mean that if the Court releases Sherpa, Respondents will re-detain her after following the right procedures.

The Court mostly agrees with Sherpa. Although Respondents note that they will re-detain Sherpa after the Court releases her, the Court does not find that makes ordering her release meaningless. *Regents* again underscores this point. As the Supreme Court held there, "the Government should turn square corners in dealing with the people." *Regents*, 591 U.S. 24 (quoting *St. Regis Paper Co. v. United States*, 368 U.S. 208, 229 (1961) (Black, J., dissenting)). This Court, too, will not let Respondents cut corners even if they are otherwise lawfully enforcing federal law.

---

[30] [Doc. No. 50, p. 12].
[31] [Doc. No. 51, p. 8].

Accordingly, the Court concludes Sherpa's release is called for. But no more. As *Pierre* held and *Rice* reiterated, Congress only authorizes the Court to issue one remedy in this habeas case: release Sherpa from detention. *See Rice*, 985 F.3d at 1070 (quoting *Pierre*, 525 F.2d at 935–36). The Court, therefore, does not—because it cannot—grant Sherpa's request to vacate the credible fear review or reinstate her asylum application.

Since the Court concludes that Respondents violated Sherpa's rights based on her first argument and that her release remedies said violation, the Court does not address her other arguments. While "it is emphatically the province of the judiciary to say what the law is," *Marbury v. Madison*, 1 Cranch 137, 177 (1803), it must not say more "when it is necessary not to [say] more" to resolve a case. *PDK Lab'ys., Inc. v. United States DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment).

Finally, Sherpa requests attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A).[32] The EAJA allows courts to award attorney fees to a party that prevails against the United States "in any civil suit." *Id.* Since a habeas "proceeding is neither a wholly criminal nor a wholly civil action" but a "hybrid action," "it is not purely a civil action and the EAJA does not authorize attorney's fees" in habeas cases. *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) (citation modified). Thus, the Court does not—since it cannot—award EAJA fees here.

---

[32] [Doc. No. 13, p. 15].

## IV.    Conclusion

For these reasons,

**IT IS ORDERED**, **ADJUDGED**, **AND DECREED** that Sherpa's Amended Petition for Writ of Habeas Corpus [Doc. No. 13] is **GRANTED**. Respondents must release Sherpa as soon as reasonably possible and may not re-detain her unless they do so lawfully. *See* 8 C.F.R. § 241.4(l). Respondents shall notify Sherpa's counsel of the exact location and time of her release no less than two hours before her release.

**IT IS FURTHER ORDERED** that Respondents shall, within 24 hours after Sherpa's release, file a status report confirming her release.

**IT IS FURTHER ORDERED** that all other interim relief that the Court issued in this matter is **VACATED**.

MONROE, LOUISIANA, this 29th day of June 2026.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE